1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   David Esquivil,                          No. 1:21-cv-01025-KJM-EPG

12                    Plaintiff,              ORDER

13         v.

14   Jeffrey Hernandez et al.,

15                    Defendants.

16

17         In this civil rights case arising out of an altercation between City of Fresno police officers

18   Jeffrey Hernandez, Hunter Larios, Rudy Alvara and plaintiff David Esquivil, defendants move for

19   summary judgment on all claims and Esquivil's request for punitive damages.  For the reasons

20   explained below, defendants' motion for summary judgment is **granted in part** and **denied in**

21   **part**.

22   I.    **OBJECTIONS**

23         The court begins by addressing defendant's evidentiary objections to the extent necessary

24   to clarify the evidentiary record for purposes of resolving the pending motion.

25         A.    **Michael Neveu Expert Declaration**

26         Defendants formally object to the declaration from plaintiff's retained rebuttal expert

27   witness Michael Neveu.  Evid. Objs. No. 1, ECF No. 52-2; Neveu Decl., Ex. B, ECF No. 47-1.

28   Defendants argue Esquivil failed to provide a timely expert report under Federal Rule of Civil

1    Procedure 26(a)(2), and that Neveu does not meet the expert requirements of Federal Rule of

2    Evidence 702.  Evid. Objs. No. 1.  Federal Rule of Civil Procedure 26 governs the disclosure of

3    expert testimony and requires an expert's disclosure to be accompanied by a written report, and

4    that the report "contain [] a complete statement of all opinions the witness will express and the

5    basis and reasons for them."  *Goodman v. Staples the Office Superstore*, LLC, 644 F.3d 817, 821

6    (9th Cir. 2011) ("[T]he disclosure of an expert witness must be accompanied by a written report

7    discussing the opinion of the expert, including the basis for the opinion").  With respect to the

8    timing of expert disclosures, Rule 26(a)(2)(D) provides: "A party must make these disclosures at

9    the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  Rule 37(c)(1)

10   states that if a party fails to provide information or identify a witness as required by Rule 26(a) or

11   (e), the party is not allowed to use that information or witness to supply evidence at trial unless

12   the failure was substantially justified or is harmless.  *Yeti by Molly, Ltd. v. Deckers Outdoor*

13   *Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

14          Among the factors that may properly guide a district court in determining whether a

15   violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party

16   against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the

17   likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely

18   disclosing the evidence.  *Lanard Toy Ltd. V. Novelty, Inc.*, 375 App'x 705, 713 (citing *David v.*

19   *Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).  The purpose of Rule 26(a) is to give

20   enough information to help defendants determine whether this expert is worth deposing, or

21   whether she is worth challenging as an expert. *Goodman*, 644 F.3d at 821.  Here, despite

22   plaintiff's untimely disclosure, defendants conceded at hearing that they had an opportunity to

23   depose Neveu and do not argue that the untimely disclosure caused them material harm or

24   impeded their ability to conduct the deposition or complete expert discovery.  Indeed, defendants

25   object to Neveu's declaration only, and not his sworn deposition testimony.  *See* Evid. Objs.

26   No. 1.  The substance of Neveu's declaration generally mirrors his deposition testimony.

2

1    *Compare* Neveu Decl. *with* Neveu Dep., Not. Lodging, ECF No. 41.[1]  The court finds the

2 untimely disclosure was harmless, while noncompliant with the letter and spirit of the Federal

3 Rules, and the exclusion of Neveu's declaration is therefore not warranted under Rule 26.

4        Defendants also argue Neveu cannot meet the expert requirements under Federal Rule of

5 Evidence 702 (Rule 702) and *Daubert v.  Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596

6 (1993).  Evid. Objs. No. 1.  They contend Neveu's declaration is speculative, uses improper

7 expert methodology and exceeds the bounds of permissible expert testimony.  Evid. Objs. No. 1.

8 Rule 702 provides an expert witness's opinions are admissible if "(a) the expert's scientific,

9 technical, or other specialized knowledge will help the trier of fact to understand the evidence or

10 to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony

11 is the product of reliable principles and methods; and (d) the expert has reliably applied the

12 principles and methods to the facts of the case."  Fed. R. Evid. 702.  Expert testimony may be

13 scientific or based on personal knowledge or experience.  *Kumho Tire Co., Ltd.*, 526 U.S. at 150.

14 If expert testimony rests on knowledge and experience, reliability depends on the knowledge,

15 experience, education, and training of the expert.  *See id.* at 147-52; *Hangarter v. Provident Life*

16 *& Accident Ins. Co.*, 373 F.3d 998, 1017-18 (9th Cir. 2004).  Whether expert testimony is

17 admissible is a question for the trial court to resolve and the court is tasked with screening out

18 "unreliable nonsense opinions," while allowing for the possibility the jury should hear and weigh

19 expert opinions that are reliable but impeachable.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142

20 (1997).

21        Esquivil retained Neveu as a rebuttal expert with expertise in police procedures pertaining

22 to use of force politics and training.  Neveu Dep. at 15.  Neveu served as a deputy sheriff's officer

23 and deputy coroner in various California police departments for more than thirty-two years total,

24 during which he obtained various training certificates and authored published Fresno Police

---

[1] Parties lodged copies of the full deposition transcripts and available camera footage with the court under this district's Local Rules.  E.D. Cal. L.R. 133(j).  When citing exhibits lodged with the court and not bearing automatic pagination generated by the CM/ECF system, including deposition transcripts, the court uses the internal pagination appearing on the cited document. When citing page numbers on filings bearing the pagination automatically generated by the CM/ECF system, the court uses the CM/ECF generated pagination.

1    Department policy. *Id.* at 6–7. In his declaration, Neveu references his own training and

2    understanding of the Fresno Police Department policy he helped to author between 1995 and the

3    early 2000s. Neveu Decl. ¶¶ 4–5. After reviewing the record, including body worn camera,

4    Neveu draws various conclusions about the altercation between officers and plaintiff. *See*

5    *generally id.* The court finds Neveu's declaration is sufficiently reliable, appropriate in scope,

6    and based on his education, knowledge, training and personal experience and therefore may be

7    considered part of the evidentiary record on summary judgment. Defendants may renew their

8    challenge to Neveu, in whole or in part, in a pre-trial motion in limine or rely on cross-

9    examination at trial. The court **overrules** defendants' objection to Neveu's declaration.

10    **B.    David Esquivil's Declaration**

11    While defendants do not formally object to Esquivil's declaration, they argue the

12    declaration is self-serving and should be considered inadmissible "sham testimony." Reply at 6,

13    ECF No. 52 (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-267 (9th Cir. 1991)).

14    The court construes defendant's assertion as an objection and addresses the admissibility of

15    Esquivil's declaration for purposes of summary judgment.

16    A declaration is not objectionable simply because it is self-serving. *See United States v.*

17    *Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999). A party has little reason to submit evidence that

18    does not serve its purposes. *See id.* And while a party cannot force its way to a trial with

19    conclusory assertions, factual claims may indeed defeat a motion for summary judgment even if

20    they are self-serving and uncorroborated. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497–98

21    (9th Cir. 2015). Rejecting a claim merely because it is uncorroborated could amount to an

22    assessment of the declarant's credibility, and courts do not decide whether claims are credible at

23    summary judgment. *Anderson*, 477 U.S. at 255. At the same time, while a self-serving

24    declaration is not objectionable, a declaration that contradicts earlier testimony is considered

25    "sham testimony" and not admissible. *Kennedy*, 952 F.2d at 266–67; *Block v. City of Los*

26    *Angeles*, 253 F.3d 410, 419 n.2 (9th Cir. 2001) ("A party cannot create a genuine issue of material

27    fact to survive summary judgment by contradicting his earlier version of the facts."). Similarly, a

4

1   declaration may be disregarded if it presents conclusions rather than facts.  *Sears*, 784 F.3d
2   at 498.

3           Defendants argue generally that Esquivil's declaration is conclusory, self-serving,
4   contradictory and therefore "sham testimony," but they do not point to any part of the declaration
5   that contradicts his past testimony.  The court itself does not find Esquivil's declaration to be
6   contradictory or otherwise submitted solely to manufacture material disputes of fact.  Esquivil's
7   declaration offers his verified factual account of the incident, and the court considers that
8   testimony in evaluating defendants' motion.  *See Sears*, 784 F.3d at 498.  The court does not
9   consider Esquivil's declaration to the extent it offers any conclusory allegations.  The court
10  **overrules** defendants' objection in this respect.

11  **II.    FACTUAL BACKGROUND**

12          The court has compared the parties' respective statements of fact and reviewed the
13  underlying record, including relevant deposition transcripts and body camera footage.  Mot., ECF
14  No. 40; Opp'n, ECF No. 47; Defs.' Resp. Disp. Facts (SMF), ECF No. 52-1; Notice of Lodging,
15  ECF No. 41.  Based on a review of the record, taking account of the court's evidentiary rulings
16  above, the court finds the following facts are undisputed unless otherwise stated and draws all
17  inferences and views all evidence in the light most favorable to the nonmoving party.  *Matsushita*
18  *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

19          On June 28, 2019, at approximately 9:45 p.m., Fresno Police Officer Hunter Larios was
20  on duty, working as a motorcycle officer when he responded to a traffic collision in the City of
21  Fresno.  Larios Decl. ¶ 3, Mot.  ECF No. 40-14; Larios Report, Mot. Ex. A at 4, ECF No. 40-2.
22  Once on the scene, Larios observed Esquivil standing in a traffic lane, about fifteen to twenty feet
23  away from Esquivil's stopped vehicle.  Larios Decl. ¶ 5; Larios Report at 4.  Esquivil, who was
24  not involved in the reported traffic collision, avers he was standing in the road helping direct
25  traffic around the collision.  Esquivil Decl. ¶ 3, Opp'n Ex. A, ECF No. 47-1; Esquivil Dep. at 16–
26  18, Notice of Lodging Ex. F, ECF No. 41

27          At Larios's request, Esquivil moved to the sidewalk, where Esquivil presented his driver's
28  license.  Larios Decl. ¶ 6.  Larios believed Esquivil was exhibiting slurred speech, watery eyes,

1  unsteady gait and a strong odor, and so Larios asked Esquivil to submit to a field sobriety test.

2  Larios Decl. ¶¶ 6–7; Larios Report at 4.  Larios shined his flashlight into Esquivil's eyes and

3  Esquivil turned away, said "fuck this," stepped off the sidewalk and into the street, and began

4  walking toward his vehicle.  Larios Body Cam. at 0:09–0:17, Notice of Lodging Ex. B, ECF

5  No. 41.  As Esquivil walked away, Larios initiated physical contact, grabbing Esquivil's left

6  shoulder.  *Id.*; Larios Decl. ¶ 9.  Esquivil raised both hands, and Larios grabbed Esquivil's left

7  wrist.  Larios Body Cam. at 0:15–0:18.  Dragging Esquivil by his wrist, Larios pulled Esquivil

8  back onto the sidewalk and into the chain-link fence abutting the sidewalk.  *Id.*  Esquivil says

9  Larios then threatened to break his arm as he clung to the fence, but defendants dispute the

10  argument.  Esquivil Decl. ¶ 6; Esquivil Dep. at 45–46; Mot. at 17.  The body camera footage

11  available to the court does not clarify this detail as the video's audio does not begin until after

12  Esquivil was on the ground.  Larios Body Cam. 0:00–0:32.

13      Officer Rudy Alvara, who was on the scene responding to the traffic collision, approached

14  Esquivil to assist Larios.  Alvara Decl. ¶ 3, ECF No. 40-11.  When Alvara reached Esquivil,

15  Esquivil was clinging to the fence; it is undisputed Alvara struck Esquivil in the upper rib area

16  four to five times, as Alvara explains, "to gain compliance."  Alvara Decl. ¶ 5; Larios Body Cam.

17  0:15–0:30.  Together, Larios and Alvara dragged Esquivil off the fence and pinned him to the

18  sidewalk on his stomach.  Larios Body Cam. at 0:20–0:30; Esquivil Dep. at 45.  Larios and

19  Alvara held Esquivil, pinned to the sidewalk, and ordered Esquivil to place his hands behind his

20  body.  Larios Body Cam. 0:20–0:30; Esquivil Dep. at 47.  Defendants argue Esquivil then utilized

21  military and martial arts maneuvers to pull his arms under his body and "prevent the officers from

22  apprehending him and placing him in handcuffs."  Mot. at 11; Esquivil Dep. at 47–49.  Esquivil

23  does not dispute that he maneuvered his hands under his body to avoid apprehension or that he

24  had military and martial arts training but characterizes his actions as acts of self-defense.

25  Esquivil Decl. ¶ 9; Esquivil Dep. at 48–50, 58.  Alvara then yelled at Esquivil, "hey, you're

26  gonna get fucking tased" and ordered Esquivil to put his hands behind his back.  Larios Body

27  Cam. 0:30–0:37.  Alvara again struck Esquivil multiple times, punching him in the upper back

28  area as Esquivil lay face down on the sidewalk.  Alvara Decl. ¶ 11; Esquivil Dep. at 46.

1        As Larios and Alvara continued to struggle with Esquivil, Officer Hernandez approached

2   to assist.  Hernandez Decl. ¶¶ 3, 6–7, ECF No. 40-12.  When Hernandez reached the location

3   where Esquivil was on the ground, Esquivil was positioned with his stomach facing the pavement

4   with Larios and Alvara on top of him.  *Id.* ¶ 8; Esquivil Dep. at 48.  Hernandez grabbed

5   Esquivil's left arm and placed it in a rear wrist lock, a type of pain compliance hold Hernandez

6   says was meant to force the suspect into submission.  Hernandez Decl. ¶¶ 11, 13.  The officers

7   again ordered Esquivil to move his right arm behind his back, *id.* ¶ 12, and Hernandez yelled at

8   Esquivil, "I'm gonna break your fucking arm."  Larios Body Cam. at 1:00–1:25; Esquivil Dep. at

9   47.  Officers then heard a popping sound coming from Esquivil's body and shortly thereafter they

10  handcuffed Esquivil.  Hernandez Decl. ¶ 18; Larios Decl. ¶ 20; Alvara Decl. ¶ 12.

11        The defendant officers then stood up, leaving Esquivil handcuffed and prone on the

12  ground; they began discussing the incident with a fourth officer, Officer Donald Huard, who had

13  arrived on the scene after the altercation ended.  Larios Body Cam. at 1:40–2:30; Esquivil Dep.

14  at 47.  Larios told his fellow officers Esquivil had driven his car up to the scene and "did not want

15  to comply."  Larios Body Cam. at 1:45–1:50.  Alvara then pointed to Esquivil's car stating, "he

16  pulled up in that car."  *Id.* at 1:40–2:00.  Later Larios describes to other officers that he first saw

17  Esquivil "just standing in the middle of the road."  *Id.* at 7:00–7:30.  Larios's police report

18  indicates he did not see Esquivil driving a vehicle and instead first observed him "standing in the

19  number one lane . . . [while] several vehicles [drove] around him to avoid striking him."  Larios

20  Report at 4; Neveu Decl. ¶ 2.

21        Emergency medical services (EMS) officers who had been on the scene previously,

22  responding to the traffic collision, responded following the altercation with Esquivil; they

23  examined Esquivil and informed him he would be transported to the hospital for medical

24  attention.  Larios Body Cam. at 11:50–11:57.  The defendant officers assisted EMS in placing

25  Esquivil on a gurney where he complained of his continuing pain.  *Id.* at 15:00–15:45; Esquivil

26  Dep. at 54.  After securing Esquivil, EMS transported him to Community Medical Center (CMC).

27  Larios Decl. ¶ 23; Esquivil Dep. at 54.  At CMC, Larios cited Esquivil for violations of California

28  Penal Code section 148(a)(1),for resisting, delaying or obstructing a peace officer, as well as

1  section 647(f) for public intoxication.  Esquivil Decl. ¶ 12; Esquivil Dep. at 62; Larios Decl. ¶ 24;

2  Larios Report at 6.  Doctors at CMC diagnosed Esquivil with a closed spiral fracture to the upper

3  bone of his left arm.  Esquivil Dep. at 65; Medical Record Ex. H (sealed), ECF No. 44.

4        Esquivil sought follow-up medical treatment at the Veteran's Affairs (VA) hospital two

5  days later, on June 30, 2019, where an orthopedic surgeon confirmed his arm was broken and

6  required surgical intervention.  See Medical Record Ex. H; Esquivil Dep. at 65.  Esquivil

7  underwent surgery at the VA where doctors placed a plate and multiple pins into his left arm.[2]

8  Esquivil Decl. ¶ 14; Esquivil Dep. at 65–66.  Despite surgical intervention, Esquivil testified the

9  injury he suffered at the hands of the defendant officers has caused permanent damage, that he

10  will never regain full use of his arm and that his life and relationships are impacted by this

11  permanent damage.  Esquivil Decl. ¶ 14; Esquivil Dep. at 65–66.

12        Nearly three months after the incident, on September 26, 2019, the Fresno District

13  Attorney's Office filed a criminal complaint against Esquivil for resisting a police officer in

14  violation of California Penal Code section 148(a)(1).  Crim. Case Info. Ex. G, ECF No. 40-6.

15  Prosecutors later dismissed the case before trial.  Id.

16        Esquivil filed the complaint in this case on June 28, 2021.  See generally Compl., ECF

17  No. 2.  Defendants reference a First Amended Complaint in their Motion.  See Mot. at 15 ("[I]n

18  his First Amended Complaint . . . ").  Upon review of the docket, the court found the original

19  complaint, ECF No. 2, to be the only complaint filed on the docket of the case at the time of the

20  hearing.  At hearing, the parties confirmed plaintiff's counsel had served a first amended

21  complaint on defendants.  The court ordered the parties to file the amended complaint on the

22  docket, to correct the apparent oversight.  Without objection, the court relies on Esquivil's

_____

[2] Also on June 30, 2019, Esquivil tested positive for PCP (phencyclidine) and
methamphetamine and identified PCP as his drug of choice to VA hospital healthcare
professionals.  SMF No. 31; VA Progress Notes, Ex. I, ECF No. 44.  Esquivil argues he
"regrettably turned to PCP as a coping mechanism for the physical and mental trauma [he]
endured" after the altercation with police.  Esquivil Decl. ¶¶ 14–15; Esquivil Dep. at 65.  Because
the record does not undisputedly show Esquivil was under the influence of PCP during the
altercation and because, as explained below, a § 1983 claim for excessive force is evaluated
objectively based on the facts and circumstances confronting the arresting officer, the court does
not rely on the June 30 drug test in deciding the pending motion.

1   amended complaint as the operative complaint in this matter and construes all citations to the

2   complaint as citations to the first amended complaint.  *See* Mins. Hr'g at 58; First Am. Compl.

3   (FAC), ECF No. 59.

4         Esquivil names Officers Hernandez, Larios and Alvara in their individual capacities as

5   defendants.  He brings three claims against each defendant officer under § 1983: 1) excessive and

6   retaliatory force; 2) unconstitutional and retaliatory detention or arrest; and 3) malicious and

7   retaliatory prosecution.  *See generally* FAC.  Esquivil seeks general, special and punitive

8   damages against individual defendants, among other forms of relief.  *Id.* ("Prayer for Relief").

9   Defendants now move for summary judgment of all claims and on Esquivil's request for punitive

10  damages.  *See* Mot.  The motion is fully briefed.  *See* Opp'n; Reply.  The court heard oral

11  argument on the motion on June 26, 2025.  Mins. Hr'g.  Kevin Little appeared for plaintiff and

12  Lynn Carpenter appeared for defendants.  *Id.*

13  **III.    LEGAL STANDARD**

14        Summary judgment is appropriate if "there is no genuine dispute as to any material fact

15  and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is

16  "genuine" if "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v.*

17  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome

18  of the suit under the governing law."  *Id.*  The parties must cite "particular parts of materials in

19  the record."  Fed. R. Civ. P. 56(c)(1).  The court then views the record in the light most favorable

20  to the nonmoving party and draws reasonable inferences in that party's favor.  *Matsushita*,

21  475 U.S. at 587–88 ("[The nonmoving party] must do more than simply show that there is some

22  metaphysical doubt as to the material facts"); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157

23  (1970).

24        As a general matter, the moving party bears the initial burden of showing the district court

25  "that there is an absence of evidence to support the nonmoving party's case."  *See Celotex Corp.*

26  *v. Catrett*, 477 U.S. 317, 325 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d

27  1099, 1102 (9th Cir. 2000).  To carry its burden of persuasion on the motion, the moving party

28  must "persuade the court that there is no genuine issue of material fact."  *Nissan Fire*, 210 F.3d at

9

1102.  Moreover, "the requirement is that there be no genuine issue of material fact . . . .  Only

disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 247–48 (emphasis in original).

As noted above, in deciding a motion for summary judgment, the court draws all

inferences and views all evidence in the light most favorable to the nonmoving party.  *Matsushita*,

475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

**IV.    ANALYSIS**

**A.    Pleading Section 1983 Claims**

Section 1983 provides a cause of action for individuals who believe their federal rights

have been violated by someone acting under color of state law.  *Gomez v. Toledo*, 446 U.S. 635,

639 (1980) (citing 42 U.S.C. § 1983).  "Where a particular Amendment provides an explicit

textual source of constitutional protection against a particular sort of government behavior, that

Amendment, not the more generalized notion of substantive due process, must be the guide for

analyzing these claims."  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotations

omitted) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Though Esquivil brings his

§ 1983 excessive force claim under the First, Fourth and Fourteenth Amendments, *see* FAC at

¶¶ 13–16, his opposition addressed the claim with reference only to the Fourth Amendment.  At

hearing Esquivil conceded that because the Fourth Amendment provides the explicit textual

source of constitutional protection for Esquivil's first claim of excessive force, the court should

analyze that claim under the Fourth Amendment alone.  To the extent Esquivil pleads his § 1983

claim for excessive force in violation of the First and Fourteenth Amendments, the court

**dismisses** those claims.

**B.    Excessive Force (Claim One)**

Esquivil's first claim is based on allegations the defendant officers used excessive force in

violation of Esquivil's Fourth Amendment rights.  FAC ¶¶ 13–16.  The "settled and exclusive"

test for deciding whether an officer's force was excessive, and thus unlawful under the Fourth

1    Amendment, is the "objective" standard articulated in *Graham*, 490 U.S. at 396, and *Tennessee v.*

2    *Garner*, 471 U.S. 1 (1985). *See, e.g.*, *County of Los Angeles v. Mendez*, 581 U.S. 420, 420

3    (2017); *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam); *Thompson v. Rahr*, 885 F.3d

4    582, 586 (9th Cir. 2018). There are three steps to the analysis. First, the court must consider the

5    "type and amount of force inflicted." *Thompson*, 885 F.3d at 586 (quoting *Espinoza v. City &*

6    *County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010)). Second, the court must assess the

7    "government's interests." *Id.* (quoting *Espinoza*, 598 F.3d at 537). And third, the court must

8    decide whether the government's interests justified the force used. *See id.* This is an objective

9    test that assesses the officer's conduct "from the perspective of a reasonable officer on the scene."

10   *Graham*, 490 U.S. at 396.

11        "Because [the excessive force inquiry] nearly always requires a jury to sift through

12   disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on

13   many occasions that summary judgment or judgment as a matter of law in excessive force cases

14   should be granted sparingly." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en

15   banc); *see Seidner v. de Vries*, 39 F.4th 591, 601 (9th Cir. 2022) (same); *Green v. City & Cnty. of*

16   *San Francisco*, 751 F.3d 1039, 1046 (9th Cir. 2014) ("[T]he reasonableness of officer conduct

17   should be decided by a jury where the inquiry turns on disputed issues of material fact."].

18   Finally, while video footage is available in this case, "[t]he mere existence of video footage of the

19   incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be

20   drawn from that footage." *Vos*, 892 F.3d at 1028 (citing *Scott v. Harris*, 550 U.S. 372, 380

21   (2007)).

22                           **1.    Officer Larios**

23        Esquivil contends Larios's intrusion on his Fourth Amendment rights was severe because

24   Larios employed an "immediate confrontational approach, shining bright lights into [Esquivil's]

25   face, grabbing his shoulder, throwing [him] into the fence threatening to break his arm . . . and

26   then hurl[ed] Esquivil face first into the ground." Opp'n at 12–13. Larios denies he threatened to

27   break Esquivil's arm and, as noted above, the available body camera footage does not clarify this

28   dispute as the video's audio does not begin until after Esquivil was already on the ground. Mot.

1    at 17; Larios Body Cam. 0:00–0:32.  Larios then held Esquivil on the ground while Hernandez

2    used a pain compliance hold.  Larios Decl. ¶¶ 16–18.

3          An officer's forceful physical contact with a suspect is not a significant intrusion in every

4    situation.  *Compare Santos v. Gates*, 287 F.3d 846, 853–54 (describing the officer's takedown of

5    a suspect as a "quite severe" use of force, based only on the consequences of resulting injuries

6    "endured for a significant period of time") (overruled on other grounds recognized in *Sabbe v.*

7    *Washington Cnty. Bd. of Commissioners*, 84 F.4th 807 (9th Cir. 2023) (Berzon, J., concurring in

8    part)), *with Trevino v. City of Bakersfield*, No. 14-001873, 2016 WL 1090307, at *3, 5 (E.D. Cal.

9    Mar. 21, 2016) ("relatively minor" force used where officer sprinted towards plaintiff and

10   knocked him into grass, because plaintiff did not claim he was injured in the area of his body

11   where officer pushed him).  Here, however, based on the evidence in the record before the court,

12   a reasonable factfinder could conclude Larios slammed Esquivil into the ground and held him in

13   place while Hernandez utilized the compliance hold that resulted in a serious injury that

14   necessitated surgical intervention.  A reasonable factfinder could similarly conclude the resulting

15   serious injury alone supports finding the quantum of force used was severe, and weighs against

16   the use of force by Larios.  *See Santos*, 287 F.3d at 853–54.

17         After evaluating the quantum of force used, the court proceeds to an analysis of the

18   government's interest.  "Under *Graham*, [the court] evaluate[s] the government's interest in the

19   use of force by examining three core factors, 'the severity of the crime at issue, whether the

20   suspect poses an immediate threat to the safety of the officers or others, and whether he is

21   actively resisting arrest or attempting to evade arrest by flight.'"  *Bryan v. MacPherson*, 630 F.3d

22   805, 826 (9th Cir. 2010) (quoting *Graham*, 490 U.S. at 396).  It is undisputed Larios attempted to

23   restrain Esquivil for a violation of California Penal Code section 148(a): the misdemeanor offense

24   of resisting, delaying or obstructing a police officer.  Cal. Penal Code § 148(a)(1).  Under Ninth

25   Circuit law a violation of section 148, while serious, is not "severe" for the purposes of the

26   *Graham* analysis.  *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1091 (9th Cir. 2013) ("failing to

27   immediately comply with an officer order to get back from the scene of an arrest, when he was

28   already standing thirty-seven feet away" was "far from severe") (citing *Davis v. City of Las*

12

1    *Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007) (trespassing and obstructing police officer were not

2    "serious offenses")); *see also Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc)

3    (domestic violence suspect was not "particularly dangerous," and his offense was not "especially

4    egregious").

5           Here, the record shows Esquivil walked away from Larios, at a normal pace, despite

6    Larios's attempt to conduct a field sobriety test.  Larios Body Cam. at 0:09–0:17.  Even so,

7    viewing the evidence in the light most favorable to Esquivil as required, a reasonable jury could

8    conclude this resistance alone, while a criminal misdemeanor, weighed against the use of force.

9    *See Bryan*, 630 F.3d at 828–29 (9th Cir. 2010) ("While the commission of a misdemeanor offense

10   is not to be taken lightly, it militates against finding the force used to effect an arrest reasonable

11   where the suspect was also nonviolent and posed no threat to the safety of the officers or others."

12   (internal quotation marks and citation omitted)).

13          Proceeding to the other *Graham* factors, Larios argues Esquivil posed a threat to officers'

14   safety by resisting arrest.  Mot. at 16.  Larios's argument merges the final two *Graham* factors—

15   "whether the suspect poses an immediate threat to the safety of the officers or others, and whether

16   he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.

17   While "[t]he most important *Graham* factor is whether the suspect posed an immediate threat to

18   anyone's safety," *Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019) (citing *Mattos*,

19   661 F.3d at 441), the Ninth Circuit has found that resisting arrest is not "inherently dangerous."

20   *Bryan v. MacPherson*, 630 F.3d 805, 829 (9th Cir. 2010).  Moreover, resistance "runs the gamut

21   from the purely passive protestor who simply refuses to stand, to the individual who is physically

22   assaulting the officer."  *Id.* at 830.

23          Esquivil argues the record shows he initially displayed no active resistance to Larios and

24   that any subsequent resistance was in self-defense and did not justify the use of such severe force.

25   Esquivil contends he declined a field sobriety test and walked away from Larios at a normal pace,

26   which was not active resistance.  Opp'n at 15 (citing *Silva v. Chung*, 740 F. App'x 883, 886 (9th

27   Cir. 2018)).  Esquivil's account of the incident before Larios initiated physical contact, which

28   portrays Esquivil as a passive resister, is not inconsistent with the undisputed facts in the record

13

1   which could persuade a reasonable juror to find for Esquivil; this weighs against the use of force.

2   Even though it is undisputed Esquivil eventually displayed at least some level of resistance during

3   the altercation with the officers, by moving his arms beneath his body, the Ninth Circuit has held

4   excessive force triggers a plaintiff's "limited right to reasonable resistance." *Blankenhorn v. City*

5   *of Orange*, 485 F.3d 463, 479–80 (9th Cir. 2007).  That is, while it is undisputed Esquivil

6   demonstrated some level of resistance, when viewing the evidence in the light most favorable to

7   Esquivil, as the court must do at this stage, a reasonable jury could find Larios's use of force was

8   excessive and Esquivil's resistance was not unreasonable considering the officers' actions.

9        Defendants do not address the initial verbal exchange between Larios and Esquivil, or

10  Larios's initial physical contact with Esquivil, Larios Body Cam. at 0:15–0:18, and instead focus

11  their argument on Esquivil's resistance after officers brought him to the ground.  Specifically,

12  defendants argue Esquivil "exhibited active resistance and calculated the most effective means to

13  do so based on his military training" when he maneuvered his hands away from officers.  Mot.

14  at 16.  While it is undisputed that Esquivil has military and martial arts training, at hearing

15  defendants conceded the officers did not know of Esquivil's training and did not at the time

16  perceive his resistance to be militaristic in nature.  To support their contention that Esquivil's

17  resistance justified their use of force defendants cite to three Ninth Circuit cases.  Mot. at 18.

18  These cases, however, do not support a finding as a matter of law that officers' use of force was

19  reasonable.

20        In *Forrester v. City of San Diego*, the court analyzed whether the jury was reasonable in

21  reaching its conclusion that San Diego police officers unconstitutionally employed pain

22  compliance holds to arrest demonstrators, not whether pain compliance techniques are

23  constitutional across the board, in all situations.  25 F.3d 804, 809 (9th Cir. 1994) (Kleinfeld, J.,

24  dissenting) ("I shall point out some important things we have not decided.  First, we have not

25  decided that pain compliance techniques are constitutionally permissible as a matter of law.").

26  The defendants' reliance on *Eberle v. City of Anaheim* is similarly inapplicable: the altercation at

27  issue involved multiple plaintiffs who kicked officers and threw beer on them, with officers'

28  using a finger pain compliance hold to move one plaintiff away from the volatile situation.

1   901 F.2d 814 (9th Cir. 1990).  The finger-hold did not result in any bodily injury to the plaintiff,

2   unlike the pain compliance hold in this case, which indisputably resulted in significant injury.  In

3   *Tatum v. City & Cnty. of San Francisco*, the court found the use of a bar arm control hold, in

4   which the decedent plaintiff's arm was extended at the elbow joint, was not excessive force after

5   the decedent, Fullard, was found kicking a police station door repeatedly, refused to stop and

6   refused to provide identification. 441 F.3d 1090 (9th Cir. 2006).  The factual contours of *Tatum*

7   also are not meaningfully analogous to the undisputed facts here.  First, Fullard and Esquivil

8   displayed very different types of behavior with respect to the officers.  Viewing the record in this

9   case in the light most favorable to Esquivil, he did not direct any threat of violence or any

10  destructive action in the way Fullard did when kicking the police station door repeatedly.  When

11  the officers in *Tatum* asked Fullard to stop kicking the station door, he refused; when Larios

12  asked Esquivil to step out of the road and onto the sidewalk, he complied.  Furthermore, it is

13  undisputed Esquivil provided officers with identification upon request, unlike Fullard who

14  refused and remained "verbally unresponsive, except by incomprehensible mumbling." *Id.* at

15  1095.  While Esquivil did walk away from Larios after being asked to submit to a field sobriety

16  test, there is no evidence in the record that Esquivil posed an active threat to officers.  Finally, in

17  *Arpin v. Santa Clara Valley Transp. Agency*, the plaintiff did not provide medical records to

18  support her claim that she suffered any injury from the arm-twisting pain compliance hold,

19  whereas the record here shows without dispute that Esquivil suffered serious injury.  261 F.3d

20  912 (9th Cir. 2001); *cf.* Medical Record Ex. H.

21      Based on the record before the court, material factual disputes preclude a finding as a

22  matter of law that Larios's use of force was reasonable, and therefore constitutional.  It is for a

23  jury to resolve this claim, balancing the governmental interests with the severe quantum of force

24  used, unless Larios is entitled to qualified immunity as addressed below.

25                  **2.    Officer Alvara**

26      Defendants argue Esquivil does not state a claim against Officer Alvara in the complaint,

27  and therefore the court should dismiss any case against Alvara.  Mot. at 15.  Defendants further

28  contend that even if the court does reach the merits, the court should grant summary judgment on

1    Esquivil's claims against Alvara. *See id.* at 18–19. The court does not agree that Esquivil does

2    not state a cognizable complaint against Alvara at this stage, given the allegations in the operative

3    complaint, *see* FAC ¶¶ 4, 5, and therefore considers whether Esquivil's excessive force claim

4    against Alvara survives summary judgment. While the parties discuss the alleged use of

5    excessive force only very broadly, each defendant officer played a different role in the encounter,

6    and so the court analyzes each officer's conduct as reflected in the record individually. *See Jones*

7    *v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (explaining officers cannot be held liable based on

8    theory of "team effort" and instead must have individually participated in unlawful conduct); *see,*

9    *e.g.*, *Atencio v. Arpaio*, 674 F. App'x 623 (9th Cir. 2016). Put simply, Esquivil cannot support a

10    cognizable § 1983 claim against an officer such as Alvara simply "because of his membership in

11    a group without a showing of individual participation in the unlawful conduct." *Jones v.*

12    *Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th

13    Cir.1996)).

14          Alvara, like Larios, was on the scene responding to the unrelated traffic collision. He

15    witnessed Larios's initial interaction with Esquivil and approached the two after Esquivil began

16    walking away from Larios. Alvara Report, Mot. Ex. A at 7, ECF No. 40-2; Alvara Decl. ¶ 3;

17    Larios Body Cam. at 0:20–0:30. Believing Larios needed assistance, Alvara ran to the sidewalk

18    where Esquivil was grabbing the chain link-fence and says he proceeded to administer multiple

19    body strikes to Esquivil's upper ribs to achieve compliance. *Id.* Together, Alvara and Larios

20    pulled Esquivil off the fence and brought him face-down onto the sidewalk. On the ground,

21    Alvara again punched Esquivil multiple times in the upper back to "gain compliance." Alvara

22    Report at 8, ECF No. 40-2.

23          Here, Alvara's body strikes qualify as a significant use of force as a matter of law. *See*

24    *Aranda v. City of McMinnville*, 942 F.Supp.2d 1096, 1105 (D. Or. 2013) ("use [of] closed fist and

25    knee to deliver multiple 'focused blows' to [an arrestee's] head, shoulder, and side" was

26    "significant" use of force) (citing *Young v. Cnty. of L.A.*, 655 F.3d 1156, 1162–63 (9th

27    Cir. 2011)). As explained above, the use of such severe force may be justified in certain

28    circumstances, and so the question here is whether Alvara's use of force was "objectively

1    reasonable in light of the facts and circumstances confronting" him in particular. *Graham*,

2    490 U.S. at 397 (internal quotation marks omitted); *see also Blankenhorn*, 485 F.3d at 477 (citing

3    *Graham*, 490 U.S. at 396 ("'Not every push or shove, even if it may seem unnecessary in the

4    peace of the judge's chambers,' . . . violates the Fourth Amendment")).

5          The court thus proceeds to consider the other *Graham* factors. Defendants do not present

6    factual or legal arguments regarding the application of those factors or their balancing with

7    respect to Alvara specifically, instead broadly arguing that there are "factual allegations sufficient

8    to state a legal cause of action only as to defendant Officer Hunter Larios." Mot. at 15. This bare

9    argument does not meet defendants' initial burden as the moving party of showing the district

10    court "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S.

11    at 325. While it is undisputed Alvara himself did not break Esquivil's arm, he did strike Esquivil

12    repeatedly and held him on the ground while Hernandez effected the pain compliance hold. A

13    reasonable jury could conclude Alvara integrally participated in the excessive force because he

14    "was instrumental in the officers' gaining control." *See, e.g.*, *Blankenhorn*, 485 F.3d at 481 n.12

15    (officer was liable as integral participant in use of excessive force for his role in handcuffing

16    plaintiff). For the same reasons explained above with respect to Larios, the remaining material

17    disputes of fact surrounding Esquivil's resistance and the need for a jury to balance the

18    government's interest and quantum of force used preclude finding as a matter of law that Alvara's

19    use of force was objectively reasonable and, as a matter of law, passes constitutional muster. The

20    record as to Alvara requires a factfinder to "sift through disputed factual contentions, and to draw

21    inferences therefrom," unless Alvara is entitled to qualified immunity as addressed below.

22    *Drummond*, 343 F.3d at 1056.

23          **3.**     **Officer Hernandez**

24          Defendants also argue the record cannot support a claim against Officer Hernandez but

25    present little else by way of legal or factual argument to support their motion. Mot. at 15. The

26    court disagrees, given the allegations in the operative complaint, *see* FAC ¶¶ 4, 5, and finds

27    defendants' broad argument here falls well short of meeting defendants' burden on summary

28    judgment. *Celotex*, 477 U.S. at 325. The undisputed record supports the court's finding, as it

1    does, that the quantum of force used by Hernandez was severe as a matter of law.   It was

2    Hernandez who placed Esquivil into the pain hold that, without dispute, eventually resulted in

3    breaking Esquivil's arm.  For the reasons explained above with respect to Larios and Avara, it is

4    for a jury to determine whether the government's interest under *Graham* justified the severe force

5    Hernandez employed against Esquivil, unless Hernandez is entitled to qualified immunity as

6    addressed below.

7                        **4.        Qualified Immunity**

8    Even if the record could support a jury's finding a defendant liable for a Constitutional violation,

9    if a reasonable officer would not have known that the force used here was excessive, then the

10   officer is immune to civil suit under the doctrine of qualified immunity.  "Qualified immunity is a

11   judge-made doctrine designed to 'balance[] two important interests—the need to hold public

12   officials accountable when they exercise power irresponsibly and the need to shield officials from

13   harassment, distraction, and liability when they perform their duties reasonably.'"  *Haley v. City*

14   *of Boston*, 657 F.3d 39, 47 (1st Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231

15   (2009)).  The two-pronged test used for assessing whether qualified immunity applies was first

16   articulated in *Saucier v. Katz*, 533 U.S. 194 (2001).  *See Pearson*, 555 U.S. at 232 (citing *Saucier*,

17   533 U.S. at 201).  Under that test, the court traditionally first "decide[s] whether the facts that a

18   plaintiff has alleged or shown make out a violation of a constitutional right."  *Id.* (citing Fed. R.

19   Civ. P. 12, 50, 56; *Saucier*, 533 U.S. at 201).  Then, "if the plaintiff has satisfied this first step,

20   the court must decide whether the right at issue was 'clearly established' at the time of

21   defendant's alleged misconduct."  *Id.* (citing *Saucier*, 533 U.S. at 201).  After *Pearson*, the court

22   may bypass the first step and consider only the second, if doing so can resolve the qualified

23   immunity question in full and most efficiently.  *Pearson*, 555 U.S. at 236 ("While the sequence

24   set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory.").

25   "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party

26   seeking summary judgment."  *Tolan*, 572 U.S. at 656 (citations omitted) (per curiam).

27          Here, the court has exercised its discretion and analyzed the first prong above as to the

28   excessive force claim, finding Esquivil has identified material disputes of fact as to each

                                                    18

1    defendant officer such that the case should go to jury, unless qualified immunity relieves each

2    officer of liability. *See Pearson*, 555 U.S. at 236. Turning to the second prong, the court notes

3    that clearly established law must be defined with a "high 'degree of specificity.'" *District of*

4    *Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309,

5    (2015) (per curiam)); *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019). This

6    standard is "demanding." *Wesby*, 138 S. Ct. at 589. The "legal principle [at issue] must have a

7    sufficiently clear foundation in then-existing precedent." *Id.* However, "[p]recedent involving

8    similar facts can help move a case beyond the otherwise 'hazy border between excessive and

9    acceptable force' and thereby provide an officer notice that a specific use of force is unlawful,"

10   *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (quoting *Mullenix*, 577 U.S. at 13),

11   and "a general constitutional rule already identified in the decisional law may apply with obvious

12   clarity to the specific conduct in question, even though 'the very action in question has [not]

13   previously been held unlawful,'" *Bonivert v. City of Clarkston*, 883 F.3d 865, 872 (9th Cir. 2018)

14   (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)).

15          Esquivil points to multiple Ninth Circuit cases he argues clearly establish the relevant law.

16   Opp'n at 20–21 (citing *Blankenhorn*, 485 F.3d; *Santos*, 287 F.3d; *Nelson v. City of Davis*,

17   685 F.3d 867, 881 (9th Cir. 2012)). The court finds the Ninth Circuit's decision in *Blankenhorn* to

18   be instructive. There, officers deployed a "gang tackle" to apprehend Blankenhorn, who was

19   suspected of misdemeanor trespass. During the altercation, Blankenhorn "yanked out of [the

20   officer's] grasp" and "struggled for several moments before the officers brought him to the

21   ground." 485 F.3d at 469. The Ninth Circuit concluded the relatively slow "pace of events" and

22   lack of danger to others on the scene—officers, suspects and civilians alike—could lead a

23   reasonable jury to find a violation of Blankenhorn's constitutional rights and the officers were not

24   entitled to qualified immunity under "*Graham's* holding that force is only justified when there is a

25   need for force." *Id.* at 481. Also as noted above, the Ninth Circuit found those officers who were

26   "instrumental in the officers' gaining control of Blankenhorn" violated his constitutional rights and

27   were otherwise not entitled to qualified immunity. *Id.* at 481 n.12.

1    *Blankenhorn*, decided roughly four years before the underlying incident here, thus

2    established the governing principles with sufficient clarity to place reasonable officers on notice

3    that similar conduct would violate the Fourth Amendment.  *Nelson*, 685 F.3d at 881 (finding use

4    of significant force on nonthreatening students violated clearly established law); *cf. Graham*,

5    490 U.S. at 396–97 (1989) (force must be objectively reasonable in light of the circumstances).

6         The court cannot find as a matter of law that defendant officers Larios, Alvara and

7    Hernandez are entitled to qualified immunity.  The officers, however, may renew their request for

8    qualified immunity at trial based on facts as the jury finds them.  "When there are disputed

9    factual issues that are necessary to a qualified immunity decision, these issues must first be

10   determined by the jury before the court can rule on qualified immunity."  *S.R. Nehad v. Browder*,

11   929 F.3d 1125, 1140 (9th Cir. 2019) (quoting *Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017)).

12   Here, the remaining factual disputes must be resolved to clarify the factual scenario for purposes

13   of identifying the applicable clearly established law to support the required analysis on the second

14   qualified immunity prong.  *S.R. Nehad*, 929 F.3d at 1140.

15        **C.    Unconstitutional & Retaliatory Arrest Under Section 1983 (Claim Two)**

16        Esquivil's second § 1983 claim is for unconstitutional and retaliatory detention and arrest

17   in violation of the First and Fourth Amendments against Hernandez, Larios and Alvara.  FAC

18   ¶¶ 17–20.  Defendants move for summary judgment of this claim, arguing it fails because officers

19   had probable cause to detain and arrest Esquivil.  Mot. at 21–23.  Under § 1983, "a Fourth

20   Amendment violation occurs when a person is arrested 'without probable cause or other

21   justification.'"  *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1164 (9th Cir. 2022) (citing *Lacey v.

22   Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (en banc)).  That is, while the question above

23   in addressing Esquivil's excessive force claim was whether the force used was reasonable

24   considering the totality of the circumstances, the question in addressing his second claim is solely

25   whether the officers had probable cause to arrest Esquivil.  "Probable cause to arrest exists when

26   there is a 'fair probability or substantial chance of criminal activity' by the arrestee based on the

27   totality of the circumstances known to the officers at the time of arrest."  *Id.*

1    As explained above, Larios detained, arrested and eventually cited Esquivil for violations

2    of California Penal Code sections 148(a)(1) and 647(f).  The elements of a section 148(a)(1)

3    violation are: "(1) the defendant willfully resisted, delayed, or obstructed a peace officer,

4    (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant

5    knew or reasonably should have known that the other person was a peace officer engaged in the

6    performance of his or her duties." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th

7    Cir. 2015) (internal quotation marks omitted) (quoting *Garcia v. Superior Court*, 177 Cal. App.

8    4th 803, 818 (2009)).  The elements of a section 647(f) violation are "the arrestee is

9    (1) intoxicated (2) in a public place and either (3) is unable to exercise care for his own safety or

10    the safety of others or (4) interferes with or obstructs or prevents the free use of any street,

11    sidewalk or public way." *Washburn v. Fagan*, 331 F. App'x 490, 492 (9th Cir. 2009) (quoting

12    *People v. Lively*, 10 Cal.App.4th 1364, 1368–69 (1992)).  Viewing the record in the light most

13    favorable to Esquivil, the court "examine[s] the events leading up to the arrest, and then decide[s]

14    whether these historical facts, viewed from the standpoint of an objectively reasonable police

15    officer, amount to' probable cause." *D.C. v. Wesby*, 583 U.S. 48 (2018) (quoting *Maryland v.

16    Pringle*, 540 U.S. 366, 371 (2003) (internal quotation marks omitted)).

17    On this claim, the court finds as a matter of law, officers had probable cause to detain

18    Esquivil.  The undisputed evidence in the record shows Esquivil was standing in an active

19    roadway with his car parked illegally in the center turn lane of the road.  Larios Report at 4;

20    Larios Body Cam. at 3:00.  It is undisputed that Larios believed Esquivil demonstrated a pattern

21    of speech and emit an odor Larios believed was consistent with drug or alcohol use.  Larios

22    Report at 4.  Considering the circumstances present when Larios arrived on scene, there existed a

23    "fair probability or substantial chance of criminal activity" under section 647(f), prohibiting toxic

24    intoxication.  *Lacey*, 693 F.3d at 918.  Larios therefore had probable cause to detain Esquivil and

25    order that he submit to a field sobriety test.  Esquivil's undisputed refusal to submit to a test and

26    his attempt to walk back into the road constitutes willfully resisting, delaying, or obstructing a

27    peace officer under section 148. *Contra Smith v. Cnty. of Orange*, 678 F. Supp. 3d 1182, 1199-

28    1200 (C.D. Cal. 2023) (denying summary judgment because it was disputed that plaintiff, who

21

1    was making video recording of officers, failed to comply with officers' orders that she leave, as

2    reasonable jury could conclude plaintiff was improperly arrested for making video recording).

3         Regarding Esquivil's First Amendment claim, a plaintiff can bring such a claim under

4    § 1983 against state officials who retaliate for a person's engaging in protected speech, including

5    by effecting a retaliatory detention or arrest. *Hill v. City of Fountain Valley*, 70 F.4th 507, 518

6    (9th Cir. 2023). To prevail on this claim, Esquivil "must establish a 'causal connection' between

7    the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Id.*

8    (internal quotation marks and citation omitted). Esquivil also would have to "generally 'plead

9    and prove the absence of probable cause,' because the presence of probable cause generally

10   'speaks to the objective reasonableness of an arrest' and suggests that the 'officer's animus' is not

11   what caused the arrest." *Ballentine v. Tucker*, 28 F.4th 54, 62 (9th Cir. 2022) (citing *Nieves v.*

12   *Bartlett*, 587 U.S. 391 (2019)).

13        Esquivil does not point to any facts in the record to support his claim of a First

14   Amendment violation. At hearing, Esquivil's counsel pointed to pages twenty-one through

15   twenty-three of his opposition brief to support this claim. *See* Opp'n at 23–25. Upon further

16   review of the briefing, the court is unable to identify any discussion of the First Amendment as

17   relevant to Esquivil's second claim. The court finds no support in the record for Esquivil's claim:

18   neither the complaint nor his opposition identifies what speech Esquivil believes was protected or

19   how the officer's actions show "retaliatory animus." *Hill*, 70 F.4th at 518. The court therefore

20   grants summary judgment on Esquivil's second claim as pled under § 1983 for violations of the

21   First Amendment.

22        As reviewed above, the undisputed facts show probable cause existed for the officers to

23   arrest and detain Esquivil for violations of section 148(a)(1), and defendants therefore are entitled

24   to summary judgment on Esquivil's second claim in full. For the foregoing reasons, defendants'

25   motion for summary judgment on Esquivil's second claim is **granted** on the merits, without the

26   need to reach defendants' qualified immunity defense.

1      **D.**     **Malicious and Retaliatory Prosecution Under Section 1983 (Claim Three)**

2      Esquivil's third claim is for malicious and retaliatory prosecution in violation of § 1983.

3 A criminal defendant may bring a § 1983 action for malicious prosecution against prosecutors

4 and others, including investigating police officers who wrongfully caused his prosecution. *Smith v.*

5 *Almada*, 640 F.3d 931, 938 (9th Cir. 2011) (citing *Galbraith v. County of Santa Clara*,

6 307 F.3d 1119, 1126 (9th Cir. 2002)).  Federal courts turn to state common law for the elements of

7 a federal malicious prosecution claim. *See, e.g.*, *Mills v. City of Covina*, 921 F.3d 1161, 1169

8 (9th Cir. 2019) (citing *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004)).  Under

9 California law, "a plaintiff claiming malicious prosecution [must] establish 'that the prior action

10 (1) was commenced by or at the direction of the defendant and was pursued to a legal termination

11 in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with

12 malice.'" *Id.* (quoting *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 871 (1989)).  That is,

13 "probable cause likewise forecloses a plaintiff from bringing a § 1983 claim based on malicious

14 prosecution." *Hollamon v. City of Los Angeles*, 709 F. Supp. 3d 992, 1000 (C.D. Cal. 2023), *aff'd*

15 *sub nom*. No. 24-341, 2025 WL 927310 (9th Cir. Mar. 27, 2025) (citing *Lassiter v. City of*

16 *Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009) ("[P]robable cause is an absolute defense to

17 malicious prosecution." (internal citations omitted))).

18      As explained above, defendant officers indisputably had probable cause to detain Esquivil.

19 Because they had probable cause, the court **grants** defendants' motion for summary judgment on

20 Esquivil's third claim without the need to reach defendants' qualified immunity defense to this

21 claim.

22      **E.**     **Punitive Damages**

23 Finally, defendant officers argue Esquivil is not entitled to punitive damages as a matter of law.

24 Mot. at 24.  To recover punitive damages for his § 1983 claims Esquivil must show defendant

25 officers' conduct was "motivated by evil motive or intent" or "involves reckless or callous

26 indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).  In

27 this circuit, "[t]he standard for punitive damages under § 1983 mirrors the standard for punitive

28 damages under common law tort cases," which extends to "malicious, wanton, or

1    oppressive acts or omissions." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (citing *Wade*,

2    461 U.S. at 49). "[E]ven in the absence of a compensable injury," punitive damages may be

3    available, and "[i]n such situations 'punitive damages may be the only significant remedy

4    available.'" *Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1122 (9th Cir. 2008) (quoting

5    *Wade*, 461 U.S. at 55 n. 21).

6        "It is well-established that a jury may award punitive damages under section 1983 either

7    when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or

8    callous indifference to the constitutional rights of others." *Dang*, 422 F.3d at 807 (internal

9    quotation marks, alterations, and citations omitted).

10       Here, the genuine disputes of material fact that remain for a jury to resolve, regarding

11   Esquivel's claim of excessive force, preclude the court from ruling as a matter of law that Esquivel

12   is not entitled to punitive damages. If a jury finds officers used excessive force in effectuating the

13   arrest, a reasonable jury could also conclude the defendant officers' conduct was motivated by

14   callous indifference to Esquivel's constitutional rights, even if not by "evil" intent to harm

15   Esquivel. In light of the remaining genuine issues of material facts described above, the court

16   cannot determine as a matter of law that defendant officers' actions were not "malicious, wanton,

17   or oppressive." *Dang*, 422 F.3d at 807 (citing *Wade*, 461 U.S. at 49). Accordingly, the court

18   **denies** defendants' motion for summary judgment on the issue of punitive damages.

19   **V.    CONCLUSION**

20       For the reasons above, the court **denies** defendants' motion in part and **grants** it in part.

21   The court denies defendants' motion on claim one for excessive force under § 1983 and on

22   plaintiff's related request for punitive damages as to that claim. The court otherwise grants

23   defendants' motion for summary judgment as to claims two and three.

24       Defendants' evidentiary objections regarding the declarations of David Esquivel and

25   Michael Neveu are **overruled**.

26       A final pretrial conference is set for **November 6, 2025, at 10:00 a.m.** in Courtroom 3 of

27   the Sacramento Courthouse. The parties shall meet and confer and file a joint status report

28   fourteen days prior to the final pretrial conference addressing matters the court should consider in

24

1    setting a trial date, including whether they request referral to a magistrate judge to conduct a

2    further court-convened settlement before the final pretrial conference.  *See* E.D. Cal. L.R. 281–

3    82; Fed. R. Civ. P. 16.

4            This order resolves ECF No. 40.

5            IT IS SO ORDERED.

6     DATED:  September 26, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE